Thank you, Judge Gould, thank you, Judge D'Alba, and thank you, Judge Oreck. May it please the Court, and it's an honor to be here. I would like to reserve five minutes for rebuttal, if I may. There are two legal issues pending before this Court on appeal, both of which are subject to de novo review. One, we are here today because the District Court violated Federal Rule of Civil Procedure 56, which deprived Captain Tom Fleming of his constitutional right to trial by jury. Two, we are also here today, Your Honors, because the District Court ignored the plain text and the statutory requirements that are unique to Idaho's Protection of Public Employees Act. Counsel, I have plenty of questions for you, so let me dive right in. Tell me, what were the adverse employment actions that Captain Fleming suffered? The adverse employment actions were he was made miserable every day when he came to work. The adverse employment actions were that the City, and particularly the former Chief of Police, Ryan Lee, interfered with his core job functions, which were specific to him as the Captain of the Internal Affairs Department. Captain Fleming was made to be belittled. He was made to feel less than. He was harassed to the point that it not only impacted his ability to do his job, but it impacted his everyday life. And the testimony of his wife, who witnessed it firsthand, describing the nights in which he woke up with terrors and dreams of drowning or being buried alive, where he would come home pacing like a tiger, in her words, Those are the types of torment and distress that no public servant should have to be exposed to. So now tell me, what were the protected activity that he was engaging in? There were several, Your Honor. The first was in August of 2021, when he reported the issue regarding Officer Tim Green. Officer Tim Green was an off-duty police officer who was involved in a shooting in which a person was killed after being shot seven times by the police. Officer Fleming and his subordinate IA officer, whose name has been redacted and is in the sealed brief, her deposition is there, recommended that there were Brady issues with this Officer Tim Green's testimony to the IA investigator, as well as concerns about his fitness for duty because he claimed to be experiencing emotional harm from witnessing this incident. They encouraged him to be placed on paid administrative leave pursuant to public policy and the department's policy, and Chief Lee refused to do so and harassed them and terrorized them. There was the testimony of the IA investigator being so emotionally overcome that she had to excuse herself from the meeting in which he called after her, Okay, Rodney King. The second was Mr. Fleming's participation in the Sergeant Kirk Rush incident in which the chief of police performed a stranglehold on Sergeant Rush during a department administrative meeting and broke his neck. It was Captain Fleming in November of 2021 who referred that incident for outside investigation by the Idaho State Police and his name was in the police report, providing notice to the chief of police who was responsible for that investigation. The third was Mr. Fleming's participation in the Office of Police Accountability's brief intake of the complaints, which was quashed by city leadership, Your Honor, and those are the three protected activities in addition to his attempts to get help from his supervisor, Deputy Chief of Police Tammany Brooks. And so I was looking at the District Court's Order Council and they looked at eight specific instances of hostility by Chief Lee, but they found no constructive discharge because there was no change, according to the District Court, in Mr. Fleming's working conditions. Address that, please. We dispute that contention, Your Honor. We believe that that was legal error. So missing from the District Court's written order are three aggravating factors and this Ninth Circuit has required, and I pardon my pronunciation, but Schmidrig, I believe, versus Columbia Machinery, as well as Nolan versus Cleland, as well as Wallace versus City of San Diego, the District Court to look at those aggravating factors. And there are three aggravating factors that the District Court ignored below, Your Honors. The first is the emotional toll that this harassment was having on Captain Tom Fleming, which forced him to choose between preserving his own mental health or sacrifice his career and financial security from his career in law enforcement. The second aggravating factor, Your Honor, was the lack of remedies available to Captain Fleming within the City of Boise, which is incompatible with the requirements of Idaho's whistleblower statute, subsection 2104, subsection 4. The third aggravating factor, Your Honor, that the District Court did not acknowledge in its written decision was the systemic scope of former Chief Lee's retaliation and hostility that materially altered and interfered with Fleming's core job functions as the Captain of Internal Investigations and impacted not only Fleming himself, but at least half a dozen other city employees. I think that the absence of any citation to the affidavit of former Office of Police Accountability Director Jesus Jara is illustrative in this case, Your Honor, because that OPA report describes how this was impacting the Boise Police Department from the top to the bottom and that the police department was bleeding officers, and it's already hard enough to recruit officers, particularly in the state of Idaho, and that this was impacting not only Mr. Fleming, but impacting his subordinates and his colleagues whom he took an oath to protect and serve. And that he, because of the interference by Chief Lee, as well as city leadership, that his own integrity, just like the integrity of the City of Boise, was under attack and that he couldn't abide by these actions being associated with his name. What's the best case for you that expresses the hostile work environment that causes the constructive discharge? The best three cases, Your Honor, would be Wallace v. City of San Diego, Watson v. Nationwide Insurance, and Nolan v. Cleland. I would also bring the Court's attention to Sorenson v. City of Caldwell, which was an unreported case, but is still similar. And these are instances in which there are multiple incidents of retaliation over the course of multiple months. And as a matter of law, this Court has found that these are issues of fact. How many are required is an issue of fact for the jury. There should not be any bright line rule. The only time that this Court has recognized a bright line rule in which evidence does not amount to a constructive discharge is in that Schnidrig v. Columbia Machinery, in which a single isolated incident without those aggravating factors is not enough. I think the Nolan v. Cleland, if I was going to choose one, in which this was, I think the Court identified one to four incidents that drew over the course of several years, I believe, was enough to be submitted to the jury. And in this case, we have a much higher volume of hostilities in a much tighter time frame, in eight months. And the temporal proximity of the hostility to Captain Fleming's protected activities is very, very tight and very, very clear that Chief Lee, once he knew that Captain Fleming wasn't diehard loyal to him, he was gone. And it was only a matter of time. And so to address those aggravating factors as well, which takes this out of Schnidrig and into this is a jury trial issue, Your Honor. And so I think that there are two instances from the written decision and two instances from the hearing transcript that I think are illustrative of the violation of Rule 56 in this case, Your Honor. One is that can be found on pages 12 through 13 of the appellate record, which is when the district court wrote, Fleming identifies eight specific hostile work environments over the course of about eight months, plus broader climate problems at the police department, but problematically goes on to say that as a matter of law, the eight instances standing alone do not amount to constructive discharge. First of all, this is not a matter of law. This is a question of fact, and it should be for the jury to decide that in this democratic society. Second, we are not talking about eight incidents standing alone. First, there is the fact that this was also a daily pattern of behavior. That Captain Fleming talked about that prior to these protected activities, he and Chief Lee had a great working relationship. They were friendly. They conversed. They worked well together. As soon as he came back from that knee surgery, after reporting the rush incident, his working life changed. He was isolated. He was cast aside. He was ignored. And when he wasn't ignored, he was being actively harassed and demonstrated hostility. And so it's not just eight incidents standing alone. This is a greater pattern of behavior, as well as those aggravating factors that I've already addressed. And again, this court has never recognized the Bright Line rule, and we would posit that it would be legal error to adopt one, given the constitutional right to trial by jury. The other issue, Your Honor, is that the district court did not cite to 2104, subsection 4. And that is the provision that states, and it's unique to Idaho's Protection of Public Employee Act, that an employer may not implement rules or policies that unreasonably restrict an employee's ability to document the existence of waste of public funds. And in pages 15 of the appellate record, you know, he goes through subsection 1, subsection 2, subsection 3, but ignores subsection 4. And that's a critical theory in this case. I notice that I'm going into my rebuttal time, but I do want to finish that thought. There was three ways in which the city of Boise unreasonably restricted his ability to document and report. The one was that they denied he and his colleagues access to the HR department. They all tried to go to city HR. They said, nope, we can't take your complaints. Then they go to OPA. Second, the OPA is an institution specifically created for politically independent investigations into police misconduct. The OPA director, Jesus Hara, recommended, there's a problem here. We need to investigate this further. City leadership says, nope, you are done. You are not to take any more BPD officers. We are closing this investigation. Case closed. And then the third way that they interfered was that they allowed the chief of police to oversee IA investigations in which he was the subject of the investigations. And there's testimony regarding the chilling effect that that had, Your Honors. I will reserve the rest of my time for rebuttal if I may. Counsel, I have one question. Does the city of Boise have a right to stop the OPA from proceeding? No, Your Honor. And that was the subject of a separate lawsuit brought by Mr. Jesus Hara himself. I was counsel in that case as well. Okay, thank you. Thank you, Your Honor. And now we'll hear from the city of Boise. Ms. Judd. Good morning, Your Honors. May it please the Court. My name is Erica Judd, and I'm here today on behalf of the city of Boise. As earlier observed by the district court, the plaintiff, appellant Tom Fleming, was not constructively discharged in this case. I appreciate Judge DeAlba's questions and comments because they go to the heart of why this case fails and why the district court was correct in granting summary judgment in favor of the city. I would note that the plaintiff appellant's claims fail for two reasons. One is he failed to adduce facts sufficient to show a genuine issue of material fact as to his claim of constructive discharge. Secondarily, he failed to adduce facts showing a causal link between any protected activity and an adverse action. To Judge DeAlba's point, the adverse actions in this case are nebulous. At this point, I appreciate counsel's clarification today that the protected activity was three events. One was that he participated in an interview or an investigation of an officer in August of 2021. The second was referral of an investigation regarding the chief of police to the Idaho State Police in October of 2021. And the third protected activity he identified was an OPA intake. When we talk about the OPA as an initial matter, I think it is really important for this court to note that Fleming himself was not a complaining witness. He was asked to participate in an interview by the director of OPA at the time. So when we talk about that the city restricted his ability to have an avenue with which to complain, there's no evidence in the record that he had tried to complain to OPA, to HR. He was internal affairs himself. So I think skipping forward a little bit, I struggled with the last comments made by counsel that for the violation of 2104, this is how the city unreasonably restricted, essentially, or his protected activity, the denied access to HR. When you're evaluating a workplace harassment, environmental harassment matter, aren't you looking at the totality of the circumstances? Absolutely, Your Honor. And I would submit that's exactly what the district court did. He looked at the allegations by Fleming, taken as true, that there were these eight hostile incidences over the course of time. And he found that applying the Ninth Circuit precedent to what it takes to reach that constructive discharge, intolerable burden, it's a high bar, as this court is well aware. To reach that, he had to show more. He had to show aggravating circumstances. So he looked at the course of conduct over a course of eight months. He looked at the totality of the circumstances. And I think that where there's a question or a dispute as to whether or not he considered the totality of circumstances based on a remark he made during oral argument, in oral argument he questioned whether this was really a totality of the circumstances case. The flip side of that, though, was that was in the context of argument by plaintiff appellant that the court could consider what happened to all of these other people, how other individuals felt, what other individuals perceived. And Judge Windmill in that moment said, why do I get to consider how other individuals felt, what they experienced? Because what happened to a different individual did not happen to your client. And so the totality of the circumstances, as it applies, applies to Mr. Fleming, not to Mr. Hara or any other individuals that they wanted to talk about. And I think what the court was concerned about was a sideshow. This is about Mr. Fleming and the conditions he experienced. And viewed as a whole, the court absolutely considered the totality of the circumstances in looking at what are the acts complained of, when did they start, when did they end, what in totality was the environment. And so as we heard again here today, there's a lot of rhetorical speech about how he felt, what he thought. There's very little evidence and the plaintiff appellant doesn't challenge the court's factual findings as to the eight hostile events, none of which constitute an adverse action under either Idaho law or under federal precedent. Counsel, would you consider Fleming's investigation into Officer Green a protected activity? Your Honor, I would dispute that it was. That wasn't fully briefed or argued below, but I would dispute that it was because that was a core function of his job. If we were in the context of a First Amendment case and you're looking at whether or not it qualifies as protected speech, if it's a core function of their job and he was doing it as part of his daily duty, conceivably anything that Captain Fleming did would have been a protected activity because that was his job, to investigate other claims against officers within the department. And so under that view, I would say there is no protected activity in that. For the purposes of argument, however, they can have that one, they can have – absolutely I think that participation in the OPA interview as a witness would have qualified as a protected activity. We don't dispute that. I do have a factual question for you because this is kind of where I'm stuck. What am I to make about the fact that Captain Fleming retired just seven months shy of being able to receive his full benefits? That – let me walk you through my thoughts. That to me lends credence to this idea that the workplace was so intolerable that I couldn't even wait seven more months before I retired. And, you know, he could have retired with full benefits, but seven months is not that long of an amount of time. It leads me to believe he was pretty miserable. And, you know, the other facts, as explained anyway, seem like, you know, a reasonable jury could find that, you know, the conditions were not ideal here. Your Honor, as to your first point, the record also reflects that he was offered a job at BSU, and he had to have a certain amount of time before he could start the job at BSU. And he told another colleague, it was an opportunity too good to pass up. So to your point, Your Honor, why wouldn't he have waited the seven months? He didn't wait the seven months so that he could take a different job, where frankly between his – and this is in the record – his pay under retirement and his new salary exceeded what he was already making. So he could leave the city and go make more money doing something else. And so there was both a financial motivation, frankly, to leave, but also a real tangible benefit to switch to his dream job. And so that – as to your first question, why would you leave seven months early, as to the second question, when we look at what his environment was, it does not meet the standard that this Court has previously applied in constructive discharge cases. This is intolerable working conditions. And when you look at the cases as to what is intolerable, I would cite the Court to – actually, ironically enough, plaintiff's counsel relied on these cases, but Wallace, Watson. In Wallace, you've got objectively discriminatory conduct, including failure to consider for promotion, imposing excessive and discriminatory disciplinary action, refusing without justification to approve requests for permission to teach, initiating disciplinary proceedings, threatening – I mean, the list goes on. And there's nine factors noted in Wallace that the Court considered as evidence of constructive discharge. You look at Watson. Somebody engaged in an interracial marriage. As soon as that happened, all of a sudden they got unfavorable reviews. They were – I think the unfavorable reviews was really kind of the worst, but it was an objective, tangible employment effect, an adverse consequence or adverse employment action.  Counsel, didn't we in Schindrig say that encouraging someone to resign or retire may support an individual's contention that they were constructively discharged? You did, Your Honor, in Schindrig, but I would also note that there's no – the evidence in this case is that he was not encouraged to retire. He was not asked to retire. I would note, Your Honor, that there were a few offhand comments about, you know, if it gets to be too much for you, contact Percy in the context of a professional disagreement. If you don't like it, then you can look at retirement. He wasn't told specifically you should go retire right now. Does it have to be that specific? I mean, generally in the workplace, I don't know that it is. I mean, it's kind of like you don't like it, then get out of here. Well, I think that's where we get to reasonable versus unreasonable inferences. The record in this case also shows that retiring at age 50 from Boise Police Department is not uncommon. And he was 53 at the time. Some of these conversations came up in the context of succession planning. How long are you going to be here when he was asked about his age? So it's not uncommon within the context of the police department culture that once you hit the age of 55 that those conversations start happening more frequently. And I would refer the court to the record at 521 for that Fleming acknowledged that that is a pretty consistent theme once somebody hits the age of 50. The two comments about Percy, Your Honor, were, there's two, I believe, Your Honor, and they were in April of 2022, after which he waited two months to say, I'm retiring. So when we get to the Poland factors in terms of timing, he waited two months after those comments. And then actually another month he continued to work after that. So when we get to consideration of also the timeliness of his retirement, he retired three months after the very last act he complains of was hostile. And so we've got both a timing issue. We have a cumulative effect of what really are the bad actions he complains of. We have a lack of change in working conditions of any kind. He did not move offices. He was not demoted. He did not suffer a cut in pay. And so I would say that under the totality. Let's add in to that that you had a chief who was hostile to subordinates, who used derogatory language, who attacked an employee who had a disagreement with him, and the other things. Doesn't this all sort of, if you ball it all together, doesn't it raise a question of fact that really is a jury issue? I'm trying to figure out the line, and I have enormous respect for the district judge. But just doesn't that all raise a jury issue? Your Honor, I would submit that under the totality of the circumstances, what the plaintiff wanted to do was try this case and the merits of what happened to other people, not what happened to him. The analysis about a constructive discharge looks at the objective. Would a reasonable person in his shoes feel that it motivated their willing to earn a living or that it was so horrible? And so you get into a fact inquiry as to why other people did or didn't leave or if comments were made to other people. But when we look at the plaintiff, who is the one who has to show that he suffered an adverse action, that he was fired or he was but for, because this isn't a substantial factor test. This is a but for. They have to show under the elements of an IPPEA that he suffered an adverse action because he engaged in a protected activity. And it's not about whether or not he referred out an investigation regarding somebody else or what happened to somebody else or how that person felt. When we talk about the Tim Green incident and they want to talk about things he said to other people, there's no allegation that the chief said anything to him. He testified in his deposition, he got mad and he kicked me out of the office. That's one of his hostile events. That's not the same thing as what we see in some of these other cases where they say, what happened to you was so bad that any person would have not taken that. And so if you look at some of the cases, too, they cite, we look at, for instance, if we look at Hobry versus Snow, which is a case cited by one of the cases they relied on, which is Simmons, but in Hobry you had a female employee who was sexually harassed over a course of years, physically, emotionally. It was pervasive. It was a supervisor. It was physical with her. And the district court granted summary judgment and it was overturned. And even there they said it's a question of whether a jury would find that really that bad. That's astounding to me that that would be the standard, that physical touching, you know, by a supervisor to somebody else. Nothing like that happened to Mr. Fleming in this case. He says it was kind of a gross environment. It was nobody was happy, the chief was mean. Well, but he wasn't mean to Fleming. He wasn't, I mean, and the record doesn't then develop why or what happened to everybody else either. So we're asked to infer that all of those people, or whomever, left because of the chief. And the record doesn't get us there. The record that we have is what happened to Fleming, and it simply isn't enough. I would also then go to the plaintiff mentioned the aggravating factors that he thinks gets them past the one isolated event standard. And he does the emotional toll on Fleming, the lack of remedies available. There's no evidence he tried to get a remedy in this case. And so when they say there's no remedies available, OPA was, in fact, an option for them. OPA was not shut down. The OPA recommendation was that a third party be hired to investigate. The city did that. They hired a third party. The city later said to OPA, redirect things back to HR. That was after Mr. Fleming left. That wasn't even while he was there. So as long as plaintiff felt was there, he always had an avenue. He could have gone to OPA. He didn't. He could have gone. I mean, I guess his direct chain up would then be city council at that point. But having not even tried, it's difficult to conceive of an argument where he was prevented from exercising any of his rights. And then the systemic interference. Excuse me, I'm over my time, I know, if I may finish this comment. When he talks about systemic interference, his one example was Green that chiefly disagreed with a recommendation they made in the context of an investigation. That's not systemic. That is one event. And so with that, I would stand for any further questions and appreciate your time. I have no questions.  Okay. Okay, thank you, counsel. Thank you, Your Honors. I'd like to address four points and then, of course, answer any questions that you may have. One issue that this court needs to address in its opinion is that the definition of adverse action under Idaho's Protection of Public Employees Act is much broader than many of the more typical federal statutes that this court typically deals with. The definition provided at 2103 as subsection 1, it means to discharge, but it also means to threaten or otherwise discriminate against an employee, quote, in any manner, any manner. And because this is our government that we're talking about, the intent of Idaho's legislature was to prohibit any sort of discrimination, even what opposing counsel would downplay as being minute or just rough language. It's intended to prevent that as well. My second point is that the appellant record, the district court did state, which is record 42 through 43, that this is not a case where there is a lack of evidence that there may have been statements made that could be viewed as pushing someone to retire. That acknowledgment requires this case to be presented to the jury. Opposing counsel stated that we didn't raise below that the officer, Tim Green, was a protected activity. I would turn to the record, page 436. It's in our Statement of Undisputed Facts, paragraph 13, under the heading protected activities, and the Tim Green element was raised below. And lastly, Judge Orrick, your comments about Judge Windmill and your question about the totality of the circumstances are right on point. I, too, as a former intern of Judge Windmill, hold him in the highest regard, but he's not infallible, and I think that he had it wrong in this case, Your Honor. Specifically, in the oral hearing, he specifically rejected this court's standard of the totality of the circumstances. He said, I really reject the totality of the circumstances standard, and that's apparent in his decision because he did not acknowledge or address much of the evidence that we put before the court, including those aggravating factors that I've discussed today. And I just would really like to finish on the importance of our constitutional right to trial by jury, that this is key to our democracy, and that the process matters. Those legal standards that we put at the top of every brief, they do mean words, and that even if this panel were to say, if I was in Tom Fleming's shoes, I would not have quit, I would ask you to still allow this case to go to the jury because it should be our community that's setting the standards of our government workplaces. It should be our community that's deciding what is tolerable versus intolerable from our public servants, and that at a time in which our judiciary is at an all-time low, we need to empower our citizens to take a first, to really take ownership of these decisions of our government, and that you can only do that in a trial by jury. I would take any questions that this court may have. No, all set. Thank you. Thank you, Your Honor. I thank counsel on both sides of this interesting case for their arguments that at this point, Fleming v. City of Boise is submitted, and the advocates will hear from us in due course. That concludes our arguments. All rise.
judges: GOULD, ALBA, Orrick